Turner, J.
 

 The decision of case No. 31653 rests upon whether the specific property of the trust in this case must be or was identified and traced in the evidence. In other words, may the plaintiff below, unanimously found to be a beneficiary, recover as cestui que trust or must she recover, if at all, as a creditor?
 

 While two judges of the Court of Appeals held in substance that she was a suppliant in a court of equity, the third judge, recognizing an original trust, held that plaintiff below must recover, if at all, as a creditor.
 

 The Court of Appeals was unanimous in holding that the amended petition was good as against demurrer even though such petition did not allege that the plaintiff had presented her claim to the executors within four months as provided in Section 10509-112, General Code, or that the claim had been reinstated under Section 10509-134, General Code.
 

 The amended petition did allege facts which would
 
 *318
 
 show, if proven, a trust. In his opinion, -the dissenting judge said:
 

 “I therefore concur in the overruling of the demurrer to the petition. I join in finding that on December 13, 1918, defendants’ decedent accounted to Charley K-nab, father of plaintiff, for the principal sum of $5,000 and earnings thereon in the amount of $5,053.63, and acknowledged that the sum of $10,053.63 had on such date ‘been transferred by Charley Knab to Eva Staley, and who has requested that I hold the same pending certain instructions from her, ’ and that during his lifetime decedent acknowledged on several occasions that he had plaintiff’s money.”
 

 On the question of remedy the court divided, the dissenting judge stating:
 

 “The majority opinion confuses the rights arising out of the two remedies. If the specific trust property cannot be traced, the beneficiary undoubtedly has the right to recover, but in such event he recovers as a creditor and not as a beneficiary. Whatever injustice may have been suffered by plaintiff is attributable to her failure to file her claim within the statutory period required by the Probate Code.”
 

 All members of the Court of Appeals found that a trust had been created. We accept their finding as we do not weigh the evidence. We do, however, examine the record to see if the requisite degree of proof has been adduced.,
 

 The appellants in case No. 31653 claim that the finding of the Court of Appeals is not sustained by sufficient evidence. It is stated in appellants’ brief:
 

 “It is manifest therefore that the Court of Appeals found that a trust was proved, not by clear, certain and convincing evidence but by a mere preponderance.”
 

 While we agree with the first part of the statement that a trust was proved, we differ as to the degree of
 
 *319
 
 proof. There were three opinions written in this case. It is true that in one of the majority opinions it is stated:
 

 “Plaintiff has the burden of proof and she must sustain each and every issue raised on her amended petition by a preponderance of the evidence. * * *
 

 “The defendants have offered no evidence of a direct and affirnlative character to meet or overcome this evidence of plaintiff, and it appears that- the trust relationship in said fund is established by a preponderance of the evidence.”
 

 “The evidence discloses that the father of plaintiff and Judge Crow were close personal friends for many years; that plaintiff was employed by Crow in his law office as stenographer, beginning in the year 1902; that this employment relationship continued until said trustee went on the bench in the year 1911; that she aided him in his campaigns and ‘was very loyal and efficient and was very good to work any time he called her, either day or night’; that plaintiff subsequently served as secretary of the Upper Scioto Conservancy District for 24 years, all of which time she had her office in the courthouse; that the relationship between plaintiff and Judge Crow throughout this whole period and to the time of his death was friendly and confidential ; and that plaintiff is of good character and reputation in her community.”
 

 “However, it is
 
 clear
 
 that these considerations do not meet the preponderating character of plaintiff’s evidence. * * * As stated before, the character of plaintiff and her witnesses and the testimony given by them
 
 stands unimpeached.
 
 Furthermore, it is hardly conceivable that a person of good character could or would evolve such a fraudulent and criminal scheme, as is implied by this contention, or that plaintiff in this case could induce and persuade the good citizens of her
 
 *320
 
 community, who appeared in her behalf, to aid her in looting this estate and committing so gross a fraud.
 

 ‘ ‘ The defense in this case is predicated on the denial that a trust was ever established between plaintiff and the alleged trustee. In view of this defense, no evidence of disclaimer or of receipt of the trust funds by the cestui que trust or release of the trustee was introduced into evidence. * * *
 

 “On the whole record,
 
 we reach the conclusion that there should be a finding for plaintiff that a trust was established on December 3, 1918, at which time the-plaintiff gave Judge Crow the sum of $10,053.63 as-trustee for her.” (Italics ours.)
 

 While this majority judge did refer to the preponderance of the evidence, yet when we examine his opinion by its four corners we come to the conclusion that the judge was convinced that the evidence established the trust by certain, clear and convincing evidence.
 

 The other two judges, each of whom wrote a separate opinion, did not mention the quantity or quality of the evidence, but the concurring judge did say:
 

 “I am in accord with my associates that the amended petition states a cause of action and concur in the overruling of the demurrer to it.
 

 “On the fact issues presented by the pleadings, I am also in accord that the evidence establishes that the-trust in the amount of $10,053.63 was accepted from plaintiff by the defendants ’ decedent in 1918. The evidence of his admissions to witnesses made at various times to shortly before his death that he had plaintiff’s money, establishes that the corpus of that trust came into the hands of the defendants.
 

 “As stated in disposing of the demurrer to the amended petition, plaintiff does not seek any part of the property of the Crow estate, but only the return to her by the defendants of that which is her own,.
 
 *321
 
 hence the nonclaim statute, Section 10509-112
 
 et seq.,
 
 General Code, has no application here as to the corpus of the trust, the $10,053.63, and I concur in the judgment for her for that amount.”
 

 While we look to the opinions of the judges for aid in deciding a case, the judgment entry sets forth or omits the matters upon -which we must base our decision. The judgment entry in the case at bar does not show that only a preponderance of the evidence was adduced by the plaintiff below. Notwithstanding this, we have examined the evidence and find that the Court of Appeals had before it in the
 
 de novo
 
 trial, clear, certain and convincing evidence in respect of the creation of the claimed trust.
 

 We have left in case No. 31653 the question whether the plaintiff below under the evidence might recover as a cestui que trust or was she relegated to the status of a creditor?
 

 In 54 American Jurisprudence, 200, Section 257, it is said:
 

 “The ancient ‘earmark- doctrine that trust money having no earmarks loses its identity on being commingled with other money has been very generally repudiated, although * # *.”
 

 In the same volume at page 192, Section 249, it is said:
 

 “It is necessary to identify trust property or funds or the product or proceeds thereof in order to follow and enforce the trust against the same; otherwise the beneficiary has only a right to claim damages or the right of a general creditor. The trust pursuit does not fail, however, where substantial identification of the trust property or funds or of the proceeds or product from a conversion thereof is possible, and, according to the prevailing view, substantial identification of funds within this rule does not mean the identi
 
 *322
 
 fication of specific money, coins, bills, and notes comprising tbe funds at any one time, altbougb there is a minority view, no longer entertained to any extent, that such specific identification is requisite under the rule.”
 

 In 65 Corpus Juris, 972, Section 899, it is said:
 

 “As a general rule the cestui que trust’s equitable right of recovery is not destroyed by reason of the fact that the trustee has so commingled the trust property with his own property that it is impossible particularly to identify the trust property; for, unless the trust property is such that it can be ascertained and separated from the rest, the entire commingled fund or property will be treated as subject to the trust, to the extent necessary to make good the claim of the cestui que trust to funds traced to, and still found commingled in, the common fund, except in so far as the trustee may be able to distinguish and separate that which is his own.”
 

 At Section 900,
 
 ibid.,
 
 it is said:
 

 “While there are a number of earlier cases to the effect that the means of ascertainment fail, so that there can be no recovery by the cestui que trust, if the trust property is money and it has become commingled with private funds of like character, it is now well settled, in most jurisdictions, that the cestui que trust need not identify the particular bills or coin but that he may recover an equivalent amount from the mixed fund or mass if he can show the particular fund or mass into which the trust money has gone, such as an individual bank account of the trustee. It is usually held that commingled trust money must be traced into some specific fund, and that it is not sufficient to show that it is somewhere among the general assets of the trustee, or that it went into any one of several accounts grouped together under a single general classi
 
 *323
 
 fication. There is, however, some authority for giving the cestui que trust a charge on the entire estate of the trustee where the trust money is so mixed with his general property that it cannot be traced into any particular property or fund.”
 

 In a note in 82 A. L. R., 125, it is said:
 

 “Under the modern doctrine prevailing in most of the common-law jurisdictions, it is not necessary, in order to follow and recover a trust fund from the receiver or other liquidating officer of an insolvent trustee bank, to identify the specific money constituting the fund, or to point out the identical coins or bills which were originally placed in the custody of the bank, where the fund has been mingled with other funds in the bank.” (Citing many cases.)
 

 In the case of
 
 Smith et al., Trustees,
 
 v.
 
 Fuller et al., Assignees,
 
 86 Ohio St., 57, 99 N. E., 214, L. R. A. 1916C, 6 Ann. Cas. 1913D, 387, it is said in the latter part of paragraph five of the syllabus:
 

 “And if it be shown that at all times from the making of the deposit to the time of the assignment by the bank, there was in its vaults money of amount and value equal to the amount so deposited, a court of equity may engraft a trust upon such money, and the trustee will become a preferred creditor to the amount of such deposit.”
 

 In the course of the opinion by Judge Spear it is said at page 67:
 

 “Under earlier holdings there was some question as to the effect of the mingling of funds, the blending of the trust money with the money of the trustee being suffered to defeat the owner’s title and compel him to stand as a mere unsecured creditor; this upon the idea that the money was not earmarked and therefore could not be recovered in specie. But there seems to be now, under the practically unanimous rulings of the
 
 *324
 
 courts as well as on principle, no serious question arising from that fact. It is not the identical dollars that may be pursued any more than it is the identical grains of wheat put in a warehouse or elevator that the depositor may follow, but equivalent dollars, and the rule now is, as held in
 
 Board of Commrs.
 
 v.
 
 Strawn,
 
 157 Fed. Rep., 49, opinion by Lurton, J., that where a bank has mingled trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its own money and not from the trust fund in a situation where, as in this case, the mingled fund has not been reduced at any time below the amount of the trust fund.”-
 

 In the instant case we are dealing with an estate of over $800,000.
 

 In the case of
 
 Massey
 
 v.
 
 Fisher,
 
 62 F., 958, the Circuit Court for the Eastern Division of Pennsylvania held, as shown by headnote two:
 

 “The fact that the money was not marked, and, by a mingling with other funds of the bank, lost its identity, does not affect the right to recovery in full, if it can be traced to the vaults of the bank; and it appears that a sum equivalent to it remained continuously therein until removed by the receiver.”
 

 In the course of the opinion it is said:
 

 “Why should this wrongful act defeat the plaintiffs’ right? Nobody is injured by allowing the plaintiffs to take the amount from the deposit. The receiver and creditors stand on no higher plane than the bank, and can no more assert that it was the bank’s money than the bank could. It is true they are entitled to all the bank’s property; but this was not its property. It is not important that the plaintiffs ’ money bore no mark, and cannot be identified. It is sufficient to trace it into the bank’s vaults, and find that a sum equal to it (and presumably representing it), continuously remained there until the receiver took it. ’ ’
 

 
 *325
 
 In the case at bar, who is hurt by Eva Staley recovering this money which the court below unanimously found belonged to Eva Staley when it was turned over by Eva’s father to Judge Crow?
 

 In 40 Ohio Jurisprudence, 326, Section 123, it is said:
 

 “The cestui que trust must show that his property is in the hands of the person against whom he is asking-relief. If he can find the specific or identical property and identify it, he is entitled to recover it. There is a line of cases in this state which seems to carry the requirement of identification too far. They involve deposits of moneys which have no earmarks and, of course, are therefore impossible of exact identification. These cases seem to adopt the view that funds or moneys mixed together indistinguishably can no longer be traced. The following rule is perhaps the sounder and more generally followed: ‘Where the rightful owner is in pursuit of trust funds, he need not point out the very goods or bills or coin. He does all the law requires if he shows that the goods or bills or coin came into the hands of the defendant impressed with a trust to his knowledge. In every such case the holder must respond either in the article taken or its value.’ ”
 

 While the Court of Appeal’s decree was rendered ’ by a divided court, the dissenting judge explained his position upon the ground that, as there was a lack of identification of specific property, recovery could be had only as a creditor.
 

 We are of the opinion that the trust property was sufficiently identified and followed, inasmuch as it was shown that the trust
 
 res
 
 went into the hands of Judge Crow and was not thereafter accounted for to the beneficiary.
 

 While we are of the opinion that Section 10509-112, General Code, does not apply to this phase of this,case, yet as the question has been raised it may be well to refer to the 1941 amendment of Section 10509-112,
 
 *326
 
 General Code (119 Ohio Laws, 394, 407), which substituted for the word, “creditors,” previously used through the years, the word, “claimants.” This section provides as follows:
 

 “All claimants shall present their claims to the executor or administrator in writing, including claims arising out of contract, out of tort, on cognovit notes or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated. All claims shall be presented within four months after the date of the appointment of the executor or administrator. Every claim presented hereunder shall set forth the claimant’s address. In the absence of any prior demand for allowance, the executor or administrator shall allow or reject all claims within thirty days after their presentation; provided that failure of the executor or administrator to allow or reject within said time shall not prevent him from doing so thereafter nor shall it prejudice the rights of any claimant. Upon the allowance of a claim, the executor or the administrator, on demand of the creditor, shall furnish the creditor with a written statement or memorandum of the fact and date of such allowance. Any person whose claim 'has been presented and allowed (and not thereafter rejected) shall be deemed a creditor as said term is used in this chapter. Claims which are contingent need not be presented except as otherwise provided in this chapter. ’ ’
 

 One of the purposes of this change in terminology was to furnish a classification of allowed and disallowed claims. After a claim is allowed it is thereafter classified as a debt. The statute requires that all claims, including claims arising out of contract, out of tort, all cognovit notes and all judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, must be presented to the executors within the limited time.
 

 
 *327
 
 In view of our conclusion it will be unnecessary to decide whether the enumeration contained in the statute invokes the maxim of
 
 expressio unius est exclusio alterius.
 
 Suffice it to say that the statute involves only claims against the assets of the estate, which claims-are allowed to become debts payable out of the assets of the estate.
 

 In the instant case the plaintiff below was not seeking any part of Judge Crow’s estate but only the return of her own property which is in the custody of the executors. The executors have no right to hold this property against the beneficiary or true owner thereof.
 

 As said in 40 Ohio Jurisprudence, 209, Section 63 : 0r ^ there is but one trustee and a similar personal discretionary power is conferred upon him, neither the surviving trustee nor the successor in trust can exercise the power.” Cf. Section 10506-55, General Code.
 

 Section 10509-85, General Code, requires the executors to collect the assets of the estate. The executors have no right or power to administer assets which do not belong to the estate.
 

 While Judge Crow was a member of the Court of Appeals of the Third Appellate District, a unanimous
 
 per curiam
 
 opinion was handed down in the case of
 
 Cook
 
 v.
 
 Crider,
 
 63 Ohio App., 12, 24 N. E. (2d), 966, in which the following from 26 Ruling Case Law, 1351, Section 216, was quoted:
 

 “The true owner of a trust fund traced to the possession of another has the right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him. ’ ’
 

 In the body of the
 
 per curiam
 
 opinion it is also said:
 

 “The right of the beneficiary of a trust to have the trust fund restored not being in the nature of a debt due and owing, it was not essential to the preservation of such right in the instant case for the plaintiff to file
 
 *328
 
 a proof of claim against either the estate of his daughter, Carrie J. Greenleaf, the original trustee, or the estate of Morris D. Greenleaf who is alleged to have come into possession of the trust fund as sole devisee of Carrie J. Greenleaf.”
 

 The first paragraph of the syllabus of that case-reads :
 

 ‘ ‘ Trust property, passing to a devisee of a trustee as-part of the trustee’s estate, and, subsequently, on the death of such devisee, to two devisees of the trustee’s devisee, may, if capable of being traced, be recovered from such devisees by the settlor-beneficiary, although no claim has been filed against the estate of either decedent.”
 

 Therefore, the action of the Court of Appeals in case No. 31653 should be and hereby is affirmed.
 

 Coming now to the appeal taken in case No. 31660, involving the denial of interest on the trust
 
 res,
 
 we agree with the following quotation from one of the opinions below:
 

 “I do not find in the record a scintilla of evidence to-indicate what earnings of the trust came into the hands of these defendants. In the absence of such evidence, any judgment for earning would have to come out of the general assets of the estate. This cannot be, in the absence of compliance with the nonclaim statute.
 

 “If the trustee were the defendant, the issues would be relieved of the probate law and I could readily agree that equity would require the trustee to account for the earnings of the trust, and on his failure to do so, it would properly assess damages in a reasonable amount therefor. ’ ’
 

 It being clear that under the circumstances of this case interest would have to be recovered as damages, and, therefore, the nonclaim statute,
 
 supra,
 
 would ap
 
 *329
 
 ply, the decree of the court below in this respect is hereby affirmed.
 

 It would be a strange application of the rules of equity to hold that a trust had been created but that under the nonelaim statute enacted to protect the assets of the estate a cestui que trust might not recover the
 
 res
 
 unaccounted for by either the decedent or his representative.
 

 Therefore, the entire decree of the Court of Appeals •should be and hereby is affirmed.
 

 Decree affirmed.
 

 Weygandt, C. J., Hart, Stewart and Turner, JJ., concur in cause No. 31653.
 

 Matthias and Taft, JJ., dissent in cause No. 31653.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart, Turner and Taet, JJ., concur in cause No. 31660.